IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA NELSON, MICHAEL KRAH,
*individually and on behalf of all persons
similarly situated*,

    Plaintiff,

      v.

ALLEGHENY COUNTY, ORLANDO
HARPER *Warden of the Allegheny County Jail*,

    Defendants.

17cv1202
ELECTRONICALLY FILED

**MEMORANDUM OPINION AND ORDER RE:
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.  Introduction**

  Corrections officers at the Allegheny County Jail brought this action against Allegheny County and Allegheny County Jail Warden Orlando Harper ("Defendants") alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-54, and the Rehabilitation Act, 29 U.S.C. § 794. (Docs. 1, 22). On April 19, 2018, the Parties reached an agreement which substantially limited the scope of this action. (Pl. Ex. E, Doc. 84-6). Plaintiffs Debra Nelson and Michael Krah ("Plaintiffs") agreed to withdraw their class action allegations and proceed as a two-plaintiff case. (*Id.*). Further, the parties agreed to settle and dismiss all but two claims for interference and retaliation under the FMLA. (*Id.*). As such, the only remaining issues before the Court are (i) whether Defendants' Forced Overtime Policy interferes with Plaintiffs' rights under the FMLA and (ii) whether the Policy constitutes retaliation in violation of the FMLA.

The Parties filed cross-motions for summary judgment (docs. 83, 86), which are now ripe for disposition. Plaintiffs seek summary judgment on their interference claim, while Defendants seeks summary judgment on both the interference claim and the retaliation claim. Given that Defendants' Forced Overtime Policy violates two provisions of the DOL's implementing regulations, Plaintiffs have provided clear evidence that Defendants' Policy interferes with their rights under the FMLA. However, Plaintiffs have not introduced sufficient evidence to support a claim of retaliation under the FMLA.

Therefore, Plaintiffs' Motion for Summary Judgment, Doc. 83, as to their interference claim will be GRANTED; and Defendants' Motion for Summary Judgment, Doc. 86, will be DENIED IN PART (as to the interference claim) and GRANTED IN PART (as to the retaliation claim).

**II.     Standard of Review**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for the Aged*, 659 F.3d 282, 290 (3d Cir. 2011) (internal citations omitted).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record—i.e., depositions, documents, affidavits, stipulations, or other materials—or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he nonmoving party bears the ultimate burden of proof" for the claim in question. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 255).

### III. Statement of Facts

Plaintiffs are both corrections officers at the Allegheny County Jail. (Docs. 85 ¶¶ 1, 4; 93 ¶¶1, 4). Plaintiff Nelson has been certified as eligible for intermittent leave under the FMLA by reason of her own serious medical conditions. (Docs. 85 ¶ 2; 93 ¶ 2). Similarly, Plaintiff Krah has been certified as eligible for intermittent leave under the FMLA on account of his need to care for his mother, who is suffering from Alzheimer's. (Docs. 85 ¶ 5; 93 ¶ 5). Because of these conditions, Plaintiffs are restricted from working in excess of eight-hour shifts.[1] (Doc. 85 ¶¶ 3, 6).

Defendants has implemented a Forced Overtime Policy ("the Policy") at the Jail that requires corrections officers to work overtime. Under the Policy, the Employee Entrance Sergeant creates a "force list" at the beginning of every shift that determines the order in which officers receive mandated overtime, taking into consideration seniority and other collective bargaining agreement requirements. (Stipulated Facts ¶¶ 1-3, Pl. Ex. E, Doc. 84-6). Officers with the fewest number of forces within a two-week period are the first to receive mandated overtime. (*Id.* ¶ 2). Officers who work their mandated overtime receive credit for working a force, which is then taken into account when creating the force list at the beginning of the next shift. (*Id.* ¶ 4).

When officers refuse their mandated overtime, no matter the reason, they do not receive credit for working a force and will remain at the top of the force list. (*Id.*). If an officer takes FMLA leave in lieu of working mandated overtime, the length of the assigned overtime is deducted from the officer's FMLA leave allotment, but the officer is not credited with a force. (Docs. 85 ¶ 11; 93 ¶ 16). As a result of this Policy, an officer who uses FMLA leave to refuse

---

[1] Defendants disputes that Plaintiff Krah is restricted from working overtime shifts due to his need to provide caregiving for his mother, who has Alzheimer's Disease, alleging that he is only approved intermittent leave "to care for a parent." Doc. 93 ¶¶ 5-6. The Court finds that this dispute is immaterial to the claims at issue, and Defendants admit that Plaintiff Krah was approved for "intermittent **or reduced schedule** leave." *Id.* (emphasis added).

4

mandated overtime will be assigned more forced overtime shifts than an officer who works the forced overtime shift. (Stipulated Facts ¶ 5, Pl. Ex. E, Doc. 84-6). Moreover, an officer who uses FMLA leave in lieu of working mandated overtime will use his or her leave allotment at a faster rate than the officer would have if the Policy treated FMLA leave-takers as if he or she worked the forced overtime. (*Id.* ¶ 6).

Plaintiffs each use FMLA leave instead of working forced overtime. (Docs. 85 ¶ 14; 93 ¶ 16). When Plaintiffs use their FMLA leave in lieu of working overtime, they are assigned more forced overtime shifts than if they worked the overtime, causing them to use their leave allotment at a faster rate. (Docs. 85 ¶ 15). For example, when Plaintiff Nelson used her FMLA instead of working overtime during the month of July 2017, she was assigned 19 overtime shifts and 136 hours were deducted from her FMLA allotment. (Docs. 85 ¶ 16; 93 ¶ 16). When Plaintiff Krah used his FMLA leave in July 2017, he was assigned 20 overtime shifts and 154 hours were deducted from his FMLA allotment. (Docs. 85 ¶ 18; 93 ¶ 18). By contrast, officers who did not take FMLA leave and worked their mandated overtime in July 2017 were only assigned forced overtime an average of two (2) to five (5) times that month. (Docs. 85 ¶ 19).[2] When Plaintiff Nelson worked overtime in December 2017, she was only assigned three (3) overtime shifts. (Docs. 85 ¶ 17; 93 ¶ 17).

Plaintiffs quickly exhausted their leave time by refusing to work forced overtime shifts. (Doc. 93 ¶ 16). On August 24, 2017, Plaintiff Nelson was notified that she had exhausted her FMLA leave entitlement for the rolling 12-month period and that, until she accrued more FMLA leave time, any additional intermittent leave she took could result in disciplinary action. (Docs.

---

[2] Defendants disputes Plaintiffs' calculation of the average forced overtime shifts for officers who did not take FMLA leave in July 2017 only to the extent that they argue that data from a one-month time period is not representative of the difference in forced overtime shifts assigned to officers who use FMLA leave and those who do not over a larger period of time. The July 2017 calculation is supported by evidence.

85 ¶ 20; 93 ¶ 20). On August 27, 2017, Plaintiff Nelson refused to work a forced overtime shift; she received a Written Reprimand for this refusal on September 14, 2017 and was warned that "any future refusal of Forced overtime will result in further discipline up to and including termination" of her employment. (Docs. 85 ¶ 21; 93 ¶ 21[3]). Plaintiff Nelson worked overtime for the remainder of 2017 and continues to work overtime this year for fear of exhausting her leave allotment and being disciplined or losing her job. (Docs. 85 ¶¶ 22, 23, 25; 93 ¶¶ 22, 23, 25[4]).

Similarly, Plaintiff Krah exhausted his 12-month FMLA leave time in early 2016. (Docs. 85 ¶ 28; 93 ¶ 28). In March 2016, Plaintiff Krah refused three forced overtime shifts because he could not leave his mother unattended. (Docs. 85 ¶ 29; 93 ¶ 29). On March 11, 2016, Plaintiff Krah was disciplined for these refusals and was suspended from work without pay for nine (9) days; he lost $2,879 in wages due to this suspension. (Docs. 85 ¶¶ 30, 31; 93 ¶¶ 30, 31).

**IV. Discussion**

Congress enacted the FMLA in 1993 to "balance the demands of the workplace with the needs of families" and to "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1), (2). Under the FMLA, eligible employees are entitled to 12 workweeks of leave over a period of 12 months due to an employee's serious health condition or due to an employee's need to care for a spouse, child, or parent with a serious health condition. 29 U.S.C. § 2612(a)(1)(C), (D). Employees may take this leave intermittently or on a reduced leave schedule. 29 U.S.C. § 2612(b)(1). Intermittent leave is defined as "leave taken in separate

---

[3] Although Defendants assert that this is a disputed fact, Defendants do not, in fact, dispute that Plaintiff Nelson was warned that she would be disciplined for further refusal of forced overtime. (Doc. 93 ¶ 21).

[4] Again, Defendants dispute these facts, but offer only argument that Plaintiff Nelson is not entitled to any additional leave time and is not entitled to the protection of the FMLA for refusing to work forced overtime shifts. As Defendants has not offered any evidence that Plaintiff Nelson is not fearful of being disciplined or losing her job (and has actually confirmed that she will face such discipline), Plaintiffs' statement of this fact is entitled to belief and will be deemed undisputed by the Court.

periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.800.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights provided in the Act (the "interference" provision). 29 U.S.C. § 2615(a)(1). Further, the FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act (the "retaliation" provision). 29 U.S.C. § 2615(a)(2). Congress granted employees a private right of action to enforce their rights under the FMLA. 29 U.S.C. § 2617(a)(2). Additionally, Congress authorized the United States Department of Labor ("DOL") to promulgate regulations implementing the FMLA. 29 U.S.C. § 2654. Of concern to the provision prohibiting interference with an employee's rights under the FMLA, the DOL's regulations provide that "any violations of the [FMLA] or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).

In the case at hand, Plaintiffs have alleged violations of the interference and retaliation provisions of the FMLA. Thus, the two issues before the Court are (i) whether Defendants's Forced Overtime Policy interferes with Plaintiffs' rights under the FMLA and (ii) whether the Policy constitutes retaliation in violation of the FMLA. These issues have been fully briefed by both Parties, and this matter is now ripe for disposition. Based on the following discussion, the Court concludes that Defendants' Forced Overtime Policy interferes with Plaintiffs' rights under the FMLA because it deducts more hours from FMLA allotments than officers would have been required to work but for taking leave and requires that officers take more leave than necessary, both in violation of the DOL's regulations. However, the Court concludes that Defendants'

Policy, and the adverse employment actions taken against Plaintiffs as a result of it, are not retaliation in violation of the FMLA because it has been in place since 1996 and treats all officers who refuse mandated overtime equally, whether they take FMLA leave or not.

### A. Interference Claim

To assert a claim of interference under the FMLA, an employee must show that (i) he or she was an eligible employee under the FMLA; (ii) the employer was subject to the FMLA's requirements; (iii) the employee was entitled to FMLA leave; (iv) the employee gave notice to the employer of his or her intention to take FMLA leave; and (v) the employee was denied benefits to which he or she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d. Cir. 2005) ("[T]o assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."). Further, the employee must establish that this denial prejudiced him. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155 (2002) ("[29 U.S.C.] § 2617 provides no relief unless the employee has been prejudiced by the violation…"). Prejudice occurs when the employer's actions render the employee "unable to exercise [the right to FMLA leave] in a meaningful way, thereby causing injury." *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 318-19 (3d Cir. 2014) (quoting *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004)).

Here, the first four elements are undisputed, as it is clear that Plaintiffs are eligible employees under the FMLA, that Defendants are subject to the FMLA's requirements, that Plaintiffs are entitled to FMLA leave, and that Plaintiffs gave notice of their intention to take FMLA leave. In fact, Defendants have recertified Plaintiffs for intermittent FMLA leave at all times relevant to this lawsuit. (Docs. 87 ¶ 12; 92 ¶ 12). However, Defendants contest the final

element, i.e. whether Plaintiffs were denied benefits to which they were entitled under the FMLA, and whether Plaintiffs were ever prejudiced by Defendants' actions.

Defendants argue that Plaintiffs have never been denied FMLA benefits, as they are permitted to take intermittent leave each year until they exhaust their allotted 12 weeks. ([Doc. 88 at 3](#)). Conversely, Plaintiffs argue that Defendants' Forced Overtime Policy interferes with their FMLA rights, and hence that they are denied benefits to which they are entitled, in two respects. First, Plaintiffs contend that Defendants' Policy discourages officers from taking intermittent leave. ([Doc. 84 at 12](#)). Second, Plaintiffs assert that Defendants' Policy violates the DOL's regulations by deducting more hours from FMLA allotments than officers would have been required to work but for taking leave and by requiring that officers take more leave than necessary. (*Id.* at 14-15). Since the first argument involves a disputed question of material fact, the Court will only address Plaintiffs' latter argument, because the Policy violates the DOL's regulations and therefore Plaintiffs are entitled to summary judgment on this claim.

### 1. *Violations of the FMLA Regulations*

The determination that Defendants' Forced Overtime Policy violates the FMLA rests on the regulations limiting the number of hours an employer may deduct from an employee's FMLA Allotment to the overtime hours the employee would have been required to work but for taking leave. *See* [29 C.F.R. § 825-205](#) ("If an employee would normally be required to work overtime, but is unable to do so because of a FMLA-qualifying reason that limits the employee's ability to work overtime, the hours which the employee would have been required to work may be counted against the employee's FMLA entitlement."). *See also* Department of Labor comments at [60 FR 2203](#) ("[A]n employee's FMLA leave entitlement may only be reduced for

9

time which the employee would otherwise be required to report for duty, but for the taking of the leave."

Defendants' Forced Overtime Policy does not present a situation in which FMLA leave entitlement is only deducted for time which the employee would otherwise be required to work - - the policy results in the far greater use of FMLA leave time for forced shifts which the employee would not be required to work if that employee did not have to take FMLA leave. Using the month of July 2017 as an example shows that Plaintiffs were each assigned to work forced overtime shifts 19 and 20 times, respectively, while corrections officers not utilizing FMLA leave were only assigned an average of two to five forced overtime shifts that month. A review of the evidence presented by both Parties shows that, consistently, Plaintiffs' use of FMLA leave resulted in them being assigned to a far greater number of forced overtime shifts than corrections officers who did not use FMLA leave.

As a result, Plaintiffs were forced to use their FMLA leave time for overtime shifts to which they would not have been assigned *but for the taking of FMLA leave.* This is a violation of the regulations and clearly frustrates the overarching purpose of the FMLA as enacted - - which is to entitle employees to take a reasonable amount of leave and maintain their employment status even when faced with a serious health condition or the need to care for a family member. Defendants' Forced Overtime Policy all but guarantees that an employee who cannot work overtime because of an FMLA qualifying reason will soon exhaust that time and be subject to discipline and ultimately to termination.

### B. Retaliation Claim

To establish a retaliation claim under the FMLA, an employee must show: (1) the employee invoked the right to FMLA-qualifying leave; (2) the employer took an adverse

employment action against the employee; and (3) a causal connection between the invocation of the employee's rights under the FMLA and the adverse action. *Lichtenstein v. Univ. of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012). Proof of the employer's retaliatory intent is required. *Id.*

Plaintiffs here have shown that they invoked their rights to FMLA-qualifying leave. Both Plaintiffs have also identified adverse employment actions taken against them - - namely Plaintiff Nelson was warned that she would be disciplined if she refused future force overtime shifts after she exhausted her leave allotment and Plaintiff Krah was suspended from work without pay for nine days after he refused three forced overtime shifts because he could not leave his mother unattended and he had already exhausted his leave allotment.

The Court finds, however, that these adverse actions were not taken because the Plaintiffs invoked their rights under the FMLA, the actions were taken in furtherance of a policy that ran afoul of the requirements of the FMLA. Under those circumstances, although Plaintiffs have stated claims for interference because the policy violates the FMLA, Plaintiffs cannot prove a specific intent to retaliate against employees who invoke the FMLA simply because the Defendants followed the policy.

**V. Conclusion**

For the reasons set forth, Plaintiffs' Motion for Summary Judgment, Doc. 83, is GRANTED. Defendants' Motion for Summary Judgment, Doc. 86 is GRANTED IN PART AND DENIED IN PART. The Order of Court follows:

11

# ORDER

AND NOW, this 6th day of September, 2018, for the reasons set forth in this Memorandum Opinion, it is ORDERED that:

1. Plaintiffs' Motion for Summary Judgment, Doc. No. 83, is GRANTED, and summary judgment is entered in favor of Plaintiffs and against Defendants.
2. Defendants' Forced Overtime Policy is hereby declared to be in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-54, and Defendants are enjoined as follows:
    a. Defendants are enjoined from employing their current forced overtime policy or any other policy that assigns more mandatory overtime to Plaintiffs and other FMLA leave-taking corrections officers than it does to corrections officers who do not take FMLA leave;
    b. Defendants are enjoined from determining that Plaintiffs and any other affected FMLA leave-taking corrections officers have exhausted their available FMLA leave on the basis of any time deducted from that officer's leave allotment that would not have been deducted if Defendants assigned no more mandatory overtime to the leave-taking officer than to officers who did not take FMLA leave;
    c. Defendants are enjoined from deducting time from Plaintiffs' and any other affected officers' FMLA leave allotment for forced overtime hours that the officers would not have had to work but for the taking of protected leave; and

    d. Defendants are enjoined from disciplining Plaintiffs and other FMLA leave-taking corrections officers for taking leave after prematurely exhausting their leave due to the illegal aspects of Defendants' Forced Overtime Policy

3. Defendants' Motion for Summary Judgment, [Doc. 86](#), is GRANTED IN PART as to Plaintiffs' FMLA retaliation claims and DENIED IN PART as to Plaintiffs' FMLA interference claims, consistent with Sections 1 and 2 of this Order. Summary judgment of Plaintiffs' FMLA retaliation claims is entered in favor of Defendants and against Plaintiffs.

4. The Clerk is directed to CLOSE the case. Any fee petition shall be filed by September 21, 2018, with response thereto due by September 26, 2018, and the Court shall retain jurisdiction to rule on such petition.

SO ORDERED, this 6th day of September, 2018,
s/Arthur J. Schwab\_\_\_\_\_
Arthur J. Schwab
United States District Judge

cc:    All ECF Registered Counsel of Record